# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VALLEY RIDGE ROOFING AND CONSTRUCTION, LLC | § § § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1852-S |
| RICHARD N. MORASH | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Richard N. Morash's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim [ECF No. 17]. For the following reasons, the Court grants the Motion.

## I. BACKGROUND

On September 9, 2016, Plaintiff Valley Ridge Roofing and Construction LLC ("Plaintiff") and 7901 Blvd 26, LLC ("7901 Blvd") entered into a contract, the Commercial/Specialty Roofing Contingency Agreement ("Agreement"). *See* First Am. Compl. ¶ 5. Defendant Richard N. Morash ("Defendant") is the owner and managing member of 7901 Blvd. *See id.* ¶ 6. Pursuant to the Agreement, Plaintiff was responsible for inspecting and documenting roof damage to a commercial building located at 7901 Blvd 26, North Richland Hills, Texas ("Property"). Plaintiff was also responsible for developing an industry-standard scope of work for the restoration of the roof to be submitted to 7901 Blvd's insurance carrier and completing all of the work contained in the restoration scope of work approved and agreed to by the insurance carrier. *See id.* ¶ 7.

The Agreement reads, in relevant part, as follows:

**PRICE AND SCOPE OF WORK.** [7901 Blvd] acknowledges that the work to be performed pursuant to this Agreement will be done under the benefits of an insurance claim and that the final price is not yet known. Nevertheless, by signing below, [7901 Blvd] agrees that the 'price agreeable,' or the total claim amount

> allowed and agreed to by the insurance company ("full scope of insurance proceeds"), shall be the final contract price for this Agreement....
>
> **COMPENSATION AND METHOD OF PAYMENT**. [7901 Blvd] agrees to pay [Plaintiff] the full scope of insurance proceeds for the job as follows: Payments disbursed as paid by the insurance company and released by mortgage lien holder, unless otherwise agreed, in writing, between [Plaintiff] and [7901 Blvd].
>
> \*\*\*
>
> <u>Cooperation/Best Efforts</u>. [7901 Blvd] agrees to (1) immediately notify [Plaintiff] of any receipt of any payment or communication from its insurance company on the subject claim and to promptly pay [Plaintiff] for any amounts owed under this Agreement; (2) cooperate with insurance company to expedite [7901 Blvd's] insurance claim; and (3) use its best efforts to perform its obligations under this Agreement.

Def.'s App. 1-2. Ultimately, the insurance company paid $2,034,075.00 for the replacement of the damaged roof on the Property. *See* First Am. Compl. ¶ 13. 7901 Blvd paid Plaintiff approximately $1.1 million for its services under the Agreement. *See id.* ¶¶ 15, 19. A dispute arose with respect to the remaining $863,294.60 of the insurance proceeds, and Plaintiff instituted a binding arbitration to recover those fees. *See id.* ¶¶ 16-20. During that arbitration, 7901 Blvd agreed to pay Plaintiff an additional $521,570.15. *See id.* ¶ 19. Ultimately, Plaintiff prevailed in the remainder of the arbitration and received a judgment for $300,723.64, in addition to other fees and costs ("Arbitration Award"). *See id.* ¶ 20. The Arbitration Award was confirmed and entered in the 298th District Court of Dallas County, Texas in Case No. DC-18-05283. *See id.* ¶ 22. Plaintiff subsequently recorded an abstract of judgment lien on the Property. *See id.* ¶ 23.

Plaintiff alleges that Defendant "orchestrated an elaborate scheme to avoid that judgment, circumvent [Plaintiff's] judgment lien and avoid other financial obligations related to the Property." *Id.* ¶ 24. Specifically, Plaintiff alleges Defendant caused the property to be foreclosed upon, only to repurchase the Property by way of a credit bid during the foreclosure sale through a new company he created. *See id.* Plaintiff alleges Defendant took these actions to extinguish all

liens and claims against the property as a matter of law so that Plaintiff could not collect on its judgment. *See id.*

On September 5, 2019, Plaintiff filed its First Amended Complaint, asserting a cause of action for conversion to recover the Arbitration Award, as well as consequential and exemplary damages. *See id.* ¶¶ 26-31. On September 18, 2019, Defendant filed its Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Motion, which is now fully briefed and before the Court, sets forth two grounds for dismissal: (1) the conversion claim fails because it arises from an attempt to collect money debt; or (2) the conversion claim is barred by the economic loss doctrine. Each of those grounds is addressed, in turn, below.

## II. ANALYSIS

### A. *Conversion Claim for Money Debt Only*

Defendant first argues Plaintiff's conversion claim fails because Plaintiff does not have a right to the specific insurance checks at issue. *See* Mot. 7. A conversion claim for money must satisfy more exacting requirements than a conversion claim for other personal property. *See Edge Petrol. Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 306 (5th Cir. 2007) (noting that a conversion claim for money "is available only in limited circumstances"). Actions for conversion of money are available in Texas only where "'money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'" *Id.* at 308 (quoting *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, pet. denied)). Courts have reasoned that "when an indebtedness can be discharged by payment of money generally, a conversion action is inappropriate." *Levels v. Merlino*, 969 F. Supp. 2d 704, 719 (N.D. Tex. 2013).

"A check, like other personal property, is subject to conversion." *Ward v. Shriro Corp.*, 579 S.W.2d 257, 260 (Tex. App.—Dallas 1978, no pet.). "A party is guilty of conversion when he refuses to deliver *the proceeds* of a check to another party with a superior right to the proceeds once demanded by the other party." *Excel Interfinancial Corp. v. 20230 I-45 N., Inc.*, No. 14-94-00604-CV, 1995 WL 557538, at *2 (Tex. App.—Houston [14th Dist.] Sept. 21, 1995) (emphasis added) (citing *Ward*, 579 S.W.2d at 260). According to the Agreement, 7901 Blvd "agree[d] to pay [Plaintiff] the full scope of insurance proceeds" with "[p]ayments disbursed [to Plaintiff] as paid by the insurance company . . . ." Def.'s App. 1. Defendant, the owner and managing member of 7901 Blvd, allegedly refused to comply with that provision of the Agreement when he retained the insurance checks. First Am. Compl. ¶ 17. Viewing those facts in the light most favorable to Plaintiff, *see Sonnier v. State Farm Mutual Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007), it is plausible that Defendant had an obligation to deliver the specific proceeds from the insurance checks provided to 7901 Blvd. The Court therefore denies Defendant's Motion to Dismiss on this ground.

### B. *The Economic Loss Rule*

Alternatively, Defendant argues that the conversion claim is barred by the economic loss rule. *See* Mot. 8. "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). The economic loss rule, however, does not apply where "the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* (citations omitted). The Supreme Court of Texas expanded on this distinction as follows:

4

> The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

In *Lincoln Gen. Ins. v. U.S. Auto Ins. Servs.*, the Fifth Circuit found the economic loss rule applied where the conversion claims, based on transferring expiring insurance policies and inflating commissions, stemmed directly from alleged violations of contractual provisions. 787 F.3d 716, 725 (5th Cir. 2015). Importantly, the agreement contained "specific terms governing how to calculate the commissions and when to transfer expiring policies." *Id.* at 726. Thus, the defendant's "alleged use of the funds and policies would amount to misappropriation because [the defendant] violated a duty specified in the contract," and had the defendant complied with the contract, "the factual predicate for a conversion claim would collapse." *Id.* Based on those facts, the Fifth Circuit held that, "the injury suffered by Lincoln is the subject matter of the contract because it involved the same transactions contemplated by the contract." *Id.*; *see also Segars v. U.S. Bank Nat'l Ass'n*, Civ. A. No. 3:13-CV-4895-L, 2014 WL 50796, at *3 (N.D. Tex. Jan. 7, 2014) (citing *Dhanani v. Giles*, No. 10-07-00144-CV, 2008 WL 2210004, at *4-5 (Tex. App.—Waco May 28, 2008, pet. denied)) (same).

Here, Plaintiff's alleged entitlement to recover money is rooted in 7901 Blvd's breach of the Agreement. *See* First Am. Compl. ¶¶ 5, 18. Indeed, Plaintiff arbitrated its breach-of-contract claim against 7901 Blvd for the same alleged damages and reduced it to a final judgment.[1] *See*

---

[1] The Court considers (1) the Agreement; (2) the Arbitration Award; and (3) the final judgment at this stage of litigation because the Agreement and the Arbitration Award are "referred to in [Plaintiff's] complaint and [are] central to [Plaintiff's] claim," *Scanlan*, 343 F.3d at 536, and the final judgment is a matter of public record. *See Cinel*, 15 F.3d at 1343 n.6.

*id.* ¶¶ 20-22. If 7901 Blvd had complied with the Agreement, Plaintiff's "factual predicate for a conversion claim would collapse." *See Lincoln*, 787 F.3d at 725. Viewing the First Amended Complaint in the light most favorable to the Plaintiff, *see Sonnier*, 509 F.3d at 675, Plaintiff has not sufficiently alleged injury outside the scope of that final judgment. Therefore, the economic loss rule bars the conversion claim.[2]

Plaintiff argues the economic loss rule does not apply because Defendant was not a party to the underlying contract. Pl.'s Resp. & Mem. of Law in Opp. to Mot. to Dismiss ("Resp.") 13. Privity, however, is not a prerequisite to invoking the economic loss rule. Rather, "the economic loss rule applies *even when individual defendants are non-signatories* [to the contract at issue] when a plaintiff seeks to recover only loss under a contract." *B Choice Ltd. v. Epicentre Dev. Assocs., LLC*, Civ. A. No. H-14-2096, 2016 WL 3911123, at *18 (S.D. Tex. May 12, 2016) (emphasis added), *report & recommendation adopted*, 2016 WL 3763268 (S.D. Tex. July 14, 2016); *see also Akbani v. TRC Eng'rs, Inc.*, Civ. A. No. 3:09-CV-1154-M, 2009 WL 2614473, at *2 (N.D. Tex. Aug. 25, 2009) (same); *In re Soporex, Inc.*, 446 B.R. 750, 783 (Bankr. N.D. Tex. 2011) (collecting authorities). As Plaintiff seeks to recover only loss under the Agreement, Plaintiff's conversion claim against Defendant is barred by the economic loss rule.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss.

---

[2] Plaintiff's conclusory request for exemplary damages, *see* First Am. Compl. ¶ 31, is insufficient to avoid application of the economic loss rule. *See Jim Walter Homes*, 711 S.W.2d at 618; see *also AXA Art Am. Corp. v. Public Storage*, 208 F. Supp. 3d 820, 827 (S.D. Tex. 2016) ("A plaintiff cannot circumvent [the economic loss] rule by simply alleging that the defendant negligently performed his contract duties."); *Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 931 (N.D. Tex. 2014) ("Plaintiff alleges that she sustained . . . exemplary damages, . . . but these alleged damages will not avoid the economic loss doctrine bar . . . ." (citation omitted)).

**SO ORDERED.**

SIGNED February 3, 2020.

                                                 */s/ Karen Gren Scholer*
                                                 **KAREN GREN SCHOLER**
                                                 **UNITED STATES DISTRICT JUDGE**